On February 21, 2007, the Escambia County Department of Human Resources ("DHR") filed a verified petition to terminate the parental rights of C.C. ("the mother") to her daughter N.P.T. ("the child"). The child was 11 months old at the time DHR filed the petition, and the parental rights of the child's father had already been terminated.
In its petition, DHR alleged that the child had been in its custody since July 25, 2006; that the child was "dependent" pursuant to § 12-15-1, Ala. Code 1975; that efforts to facilitate the return of the child's custody to the mother had proved ineffective; that the mother was unable or unwilling to fulfill her responsibilities to the child; and that no suitable relatives had been located to care for the child. The petition stated that the mother had consented, in writing, to the termination of her parental rights and had waived "her rights to be notified." In its petition, DHR requested that the trial court permanently terminate the mother's rights to the child, grant permanent custody of the child to DHR, and grant DHR the authority to place the child for adoption. DHR requested a hearing on the petition.
The mother's written, notarized consent to the termination of her parental rights, which was signed by the mother on February 21, 2007, and was filed with the trial court on the same day, stated as follows:
 "Know all men by these presents: That the undersigned [C.C] . . . who is over the age of nineteen (19) years and of sound mind, hereby states as follows: *Page 449 
 "1. That she is the mother of [the child], a minor 11 months old, who at the present time is residing in Escambia County, Alabama.
 "2. That she is aware of a petition which has been filed by [DHR] seeking permanent custody of [N.P.T.] and also for termination of parental rights.
 "3. That the said [C.C] has no objection to the termination of her parental rights and hereby agrees and consents that the Juvenile Court of Escambia County, Alabama, make such orders and judgments as may be necessary to effect this termination of her parental rights and placement of permanent custody with [DHR], without further notice to her.
 "4. That [C.C] understands that this is the first step in placing the child for adoption with another family and that, if she wants to contest the petition of [DHR] she has every right to do so and will be entitled to an attorney to represent her if she is unable to afford an attorney. She has consulted with her court appointed attorney, James E. Hart, III, and consents to the action being taken by [DHR]."
On February 27, 2007, the child's guardian ad litem filed a response to DHR's petition in which he stated his belief that it would be in the child's best interest for the trial court to place custody of the child with DHR and to terminate the mother's parental rights.
The trial court did not hold a hearing on DHR's petition, and the mother never appeared before the trial court. On March 15, 2007, the trial court entered a judgment terminating the mother's parental rights and granting permanent custody of the child to DHR. Based on the verified pleadings, the judgment included purported findings of fact regarding the child's dependency, DHR's attempts to rehabilitate the mother, the mother's ability to properly care for the child both at the time of the judgment and in the foreseeable future thereafter, and the sufficiency of DHR's efforts to return the child to her natural family.
On March 28, 2007, 35 days after the mother had signed her consent to termination and 13 days after the trial court had entered its termination judgment, the mother filed a motion to set aside the trial court's judgment. In her motion, the mother acknowledged that she had signed "a voluntary agreement terminating her parental rights." However, the mother stated that she "no longer voluntarily consents to the termination of her parental rights as previously agreed to under the petition she signed on February 21, 2007." She also stated that she now "objects to the termination of her parental rights and permanent custody being placed with [DHR]." The mother did not request a hearing on her motion to set aside the judgment. The trial court denied the mother's motion on April 4, 2007. On April 12, 2007, the mother filed a timely appeal.
On appeal, the mother argues that the trial court erred in terminating her parental rights without a hearing. She argues that because no hearing was held, DHR did not present clear and convincing evidence to support its petition for termination of her parental rights.[1]
Because the trial court did not hear testimony or observe witnesses, we will *Page 450 
review the trial court's judgment without a presumption of correctness. See State Dep't of Human Res. v. L.W.,597 So.2d 703, 705 (Ala.Civ.App. 1992). We will first address the mother's argument regarding the trial court's failure to hold a hearing on DHR's petition to terminate her parental rights.
The mother's "right to be a parent to [her] child is fundamental and a court should terminate th[at] right `only in the most egregious of circumstances.' See Ex parteBeasley, 564 So.2d [950,] 952 [(Ala. 1990)]." L.M. v.D.D.F., 840 So.2d 171, 179 (Ala.Civ.App. 2002). "Termination of a parent's rights in a child is an extremely drastic measure, and once done, we know of no means of reinstating these rights." East v. Meadows,529 So.2d 1010, 1011-12 (Ala.Civ.App. 1988). As the United States Supreme Court explained in Santosky v. Kramer, 455 U.S. 745,753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982):
 "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures."
In order to afford at least minimal due process, a juvenile court must hold a hearing on a petition to terminate a parent's fundamental liberty interest in the care, custody, and management of his or her child, even when the petition involves the voluntary relinquishment of the child and written consent to termination by the parent.
Rule 24 of the Alabama Rules of Juvenile Procedure presumes that such a hearing will occur and requires certain procedural safeguards to ensure that the parties' rights are protected. Specifically, Rule 24(B) requires the following:
 "(B)(1) If all parties are represented by counsel, the court shall inquire whether counsel has explained to them the substance of the petition, the specific allegations contained in the petition; the nature of the proceedings; the rights of the parties during the proceedings; and the alternatives available to the court should the allegations of the petition be admitted or proven; if counsel has explained these things to all parties, the court shall note that fact on the record.
 "(2) If a party has counsel but counsel has not explained those things to him or her, or if a party is not represented by counsel, then the court shall explain to that party the substance of the petition; the specific allegations contained in the petition; the nature of the proceedings; the rights of the parties during the proceedings; and the alternatives available to the court should the allegations of the petition be admitted or proven."
Because the trial court did not hold a hearing on DHR's petition to terminate the mother's parental rights, it did not comply with the requirements of Rule 24. The trial court did not confirm that the mother understood the substance of DHR's petition, the specific allegations contained in the petition, the nature of the proceedings, her rights during the proceedings, and the available alternatives to termination of her parental rights.
Although the mother's written consent was a part of the record, it did not satisfy the procedural safeguards established by *Page 451 
Rule 24. Indeed, the mother's written statements regarding her understanding of the petition and her right to contest it are ambiguous, contradictory, and insufficient to satisfy even basic due-process requirements. The language regarding the mother's ability to object to DHR's petition is, at best, open to misinterpretation. At a minimum, the trial court should have held a hearing on DHR's petition and made the inquiries required by Rule 24.
However, even if the trial court had held a hearing on DHR's petition to terminate the mother's parental rights, the mother's written consent alone would not have satisfied even a minimum showing of clear and convincing evidence that she was unable or unwilling to care for the child and that termination of her parental rights was in the child's best interests. We note that the mother did not file a post-judgment motion concerning the sufficiency of the evidence, and DHR argues that the mother did not properly raise the sufficiency of the evidence as an issue in the trial court or on appeal. However, because the trial court decided the case without a jury and made findings of fact to support its judgment, the mother was not required to file a postjudgment motion as to the sufficiency of the evidence in order to challenge on appeal the trial court's findings and the sufficiency of the evidence. See Rule 52(b), Ala. R. Civ. P.; New Props., L.L.C. v. Stewart,905 So.2d 797, 800 (Ala. 2004) ("As Justice Lyons has noted: `If a court makes findings of fact in a nonjury case, Rule 52(b), Ala. R. Civ. P., excuses the losing party from objecting to the findings or moving to amend them or moving for a judgment or a new trial as a predicate for an appellate attack on the sufficiency of the evidence.'" (quoting Ex parte James,764 So.2d 557, 561 (Ala. 1999) (Lyons, J., concurring in the result))).
The mother's written consent states only that she was aware of DHR's petition and did not object to it. The written consent does not expressly show that the mother was unable or unwilling to care for the child, that alternatives to termination were not available, and that termination of the mother's parental rights was in the child's best interest. In other words, the written consent does not speak to any of the standards that must be satisfied before a trial court is authorized to terminate parental rights. See, e.g., § 26-18-7(a), Ala. Code 1975. The trial court, therefore, did not have sufficient evidence before it to find, based on clear and convincing evidence, that termination of the mother's parental rights was appropriate.
Because the trial court erred in failing to hold a hearing and in failing to satisfy the requirements of Rule 24, and because the trial court did not receive clear and convincing evidence of the minimum standards required to terminate parental rights, we reverse the trial court's judgment and remand the cause for a hearing on the petition to terminate.
REVERSED AND REMANDED.
THOMAS and MOORE, JJ., concur.
PITTMAN and BRYAN, JJ., concur in the result, without writing.
[1] The mother also argues on appeal that, by consenting to the termination of her parental rights, she was also consenting to the child's adoption, and that, as a result, the law afforded her a reasonable time to withdraw her consent. Because we decide this case on other grounds, we need not address the mother's argument regarding this issue.