PITTMAN, Judge.
 

 In these consolidated appeals, E.P. (“the mother”) and A.L.D. (“the father”) seek review of judgments of the Etowah Juvenile Court (“the juvenile court”) that found two of their children, S.D. (“the daughter”) and L.P. (“the son”) (hereinafter collectively referred to as “the children”), to be dependent and that terminated the parents’ parental rights to the children in response to a petition brought by the Eto-wah County Department of Human Resources (“DHR”). We affirm.
 

 The record on appeal reveals that, at trial, the father testified that the parents had maintained a relationship similar to a common-law marriage during the approximately 14 years preceding June 2009. During that relationship, the parents had had seven children; the youngest two are the children at issue in this case. The five older children have been in the custody of their maternal grandmother since about 2002.
 
 [1]
 

 The record reflects that the daughter was born in 2004. In April 2006, the mother and the daughter were injured when the motor vehicle in which they were riding crashed. The driver of that vehicle, who was killed in the accident, was apparently under the influence of alcohol and was exceeding the speed limit at the time of the accident. The mother, also reported by police to have been under the influence of alcohol at the time of the accident, was critically injured, and she spent the next few weeks in intensive care on a respirator. The wreck left the mother disabled, and she now relies on Social Security disability payments. The daughter suffered a broken femur but has since completely healed.
 

 DHR placed the daughter outside the parents’ home pursuant to a safety plan in May 2006; DHR then placed her in foster care in September 2006. DHR began providing services to the parents, including parenting training and drug testing, pursuant to individualized service plans (“ISPs”) in 2006. A primary goal of the ISPs was that each parent remain drug-free.
 

 The son was born in March 2007. The son’s paternity was uncertain, but in the proceedings below, it was presumed that A.L.D. was the father for the purpose of assessing A.L.D.’s parental rights. DHR allowed the son to stay in the parents’ home when he was born because the parents were making at least minimal progress toward the goals in their ISPs and no immediate danger to the son was indicated. However, in February 2008, the mother, while operating an automobile in which the son was a passenger, crashed into a wall after having “passed out.” No injuries were reported. The mother was found to have been under the influence of multiple illegal drugs at the time of the accident. The son was immediately placed into the same foster home as the daughter.
 

 The father admitted at trial to having abused illegal drugs for the preceding 12 years. Though he worked as a mason, earning wages of $19 per hour, he would exhibit periods of stability and apparent sobriety only to fail his next drug test. Over the course of the juvenile-court proceedings, the father was imprisoned from July 2008 to January 2009 for, as he testi
 
 *1253
 
 fied, “failure to report,” as well as from March 2009 to June 2009 for failing a drug test. The imprisonment for “failure to report” stemmed from charges of possession of marijuana and distribution of crystal methamphetamine in 1999. At the time of trial, the father had been living in an inpatient drug-rehabilitation program for three weeks. He expected to be allowed to work outside the center as a mason within a few weeks following the trial, and he expected to be released completely, but to continue attending counseling sessions, within five months following the June 2009 trial. He testified that he intended to then be able to provide a stable home for the children.
 

 In May 2009, DHR filed a petition seeking to terminate the parental rights of both parents. In that pleading, DHR alleged that the daughter had been in DHR’s custody since September 2006 and the son since February 2008; that reasonable efforts to rehabilitate the parents and to reunite the family had failed; that relative resources had been investigated and were not available; that the parents were unable and/or unwilling to provide a safe, stable, and permanent home for the children; and that the best interests of the children would be served by terminating the parental rights of the parents so that the children could be freed for adoption.
 

 In June 2009, the juvenile court held a hearing at which the father; two DHR caseworkers; attorneys for the father, the mother, and DHR; and the guardian ad litem (“GAL”) were present. The mother did not attend. Two attorneys represented the mother at trial — one with respect to the daughter, the other with respect to the son. Noting the mother’s absence, the juvenile-court judge stated to the attorneys: “I’ll let either one or both of [you] make a statement concerning [the mother’s] intentions concerning these petitions.” The attorney representing the mother with respect to the daughter answered:
 

 ‘Tour honor, I was able to contact [the mother] last Wednesday by [telephone]. And I spoke to her at length, and she recognizes that the children have been in foster care for so long, and that she ... is not financially stable and that her prospects for becoming a viable parent acceptable to DHR seemed remote. And that she was, in essence, consenting to the ... termination of the parental rights, with, I [imagine], the ultimate goal of adoption by the foster parents. And that she was not going to be here, because it was going to be too painful for her and cause her too much emotional anguish. And I spoke to her for a little over thirty minutes about the matter, and that was her position. She is not here.... But at any rate, she has accepted that her parental rights are going to be terminated.”
 

 The juvenile-court judge then asked the attorney representing the mother with respect to the son
 
 [2]
 
 for his input into the mother’s absence, to which the attorney replied:
 

 “I spoke with her yesterday for about thirty minutes. I stressed the importance of her being here. She told me that she probably would not. And, obviously, we’re ... twenty minutes after start time, and she is not here.... I asked her directly if she wanted to consent to the termination, and ... she never said directly that she wanted to consent to the termination. But she said it was ... a done deal and basically a foregone conclusion that she was, you
 
 *1254
 
 know, I think, road blocked at every ... turn, was the term that she used. And she couldn’t do anything to make DHR happy. She knew this was going to happen, and, you know, that she would just — she would just deal with it. And, you know, she hoped at some point in the future to have contact with the children if the adoptive parents ... would let her. And that’s — that’s all she could hope for at this point.”
 

 The juvenile-court judge replied: “Well, based upon those representations, I am going to grant DHR’s petition to terminate the parental rights of the mother, [E.P.]. Unless anybody else objects, I will excuse [the mother’s attorneys]. Okay.” The juvenile court then proceeded to trial and heard the testimony of the father and the two DHR caseworkers and the recommendations of the GAL.
 

 The mother’s sole contention on appeal is that the juvenile court erred in terminating her parental rights without holding a hearing on DHR’s petition. The mother’s first allegation in support of this contention — that the juvenile court did not hold a hearing — is patently without merit. In the case the mother cites on this point,
 
 C.C. v. State Department of Human Resources,
 
 984 So.2d 447 (Ala.Civ.App.2007), this court reversed a juvenile-court judgment that had terminated a mother’s parental rights without a hearing on the basis of a written consent to termination of parental rights signed by the mother. In
 
 C.C.,
 
 the Escambia County DHR submitted a complaint with a written consent to termination from the mother attached, and the juvenile court then simply proceeded to enter a judgment terminating the mother’s parental rights.
 
 Id.
 
 at 449. In this case, the juvenile court scheduled, and held, a hearing attended by the mother’s attorneys, and it waited for the mother to appear. The court questioned the mother’s attorneys, and it premised its final judgment on their replies. Both of her attorneys reported that the mother deliberately had chosen not to oppose termination of her parental rights.
 

 The facts of this case are more directly analogous to those in
 
 D.A. v. Calhoun County Department of Human Resources,
 
 976 So.2d 502 (Ala.Civ.App.2007). In
 
 D.A.,
 
 as in this case, the juvenile court “conducted a termination-of-parental-rights hearing,” the father and the mother were represented by separate attorneys, the father did not appear, and when the father’s attorney moved for a continuance, the court questioned the attorney about the father’s absence.
 
 Id.
 
 at 508. After finding the answer implausible, the juvenile court denied the attorney’s motion, relieved him of any further obligation to represent the father at the hearing, and proceeded to hold the hearing.
 
 Id.
 
 The juvenile court then terminated the father’s parental rights, and this court affirmed that judgment.
 
 Id.
 
 at 505. There was no question in
 
 D.A.,
 
 as there is no question here, that a hearing was held.
 

 The mother’s second argument in support of her contention that the juvenile court erred in terminating her parental rights without holding a hearing is that the mother’s consent itself was inadequate under
 
 C.C.,
 
 984 So.2d at 447. In
 
 C.C.,
 
 this court listed various requirements that must be met in order for a written consent to termination of parental rights to be valid,
 
 in the procedural posture of that case
 
 — namely, where no hearing was held by the juvenile court; those requirements were in the nature of assurances that the mother understood her rights and the nature of the proceeding.
 
 Id.
 
 at 451.
 
 C.C.
 
 is distinguishable from this case on that issue also.
 

 The mother then argues that the juvenile court in this case further erred,
 
 *1255
 
 given the alleged inadequacy of the mother’s consent, in failing to make the inquiries of the mother that are required by Rule 24, Ala. R. Juv. P. — for example, whether counsel has explained the substance of the juvenile petition and the rights of the parents.
 
 See
 
 Rule 24(b)(1) and (2), Ala. R. Juv. P. Failure of a juvenile court to follow Rule 24, however, “will constitute reversible error only if there was a proper and timely objection.”
 
 Ex parte Brown,
 
 540 So.2d 740, 744 (Ala.1989). In this case, the mother and her attorneys made no objection in the juvenile court and filed no postjudgment motion raising that issue. Therefore, the issues of the adequacy of the mother’s consent and the juvenile court’s alleged failure to observe the requirements of Rule 24 have not been preserved for appeal.
 
 Id.
 
 at 745. Generally, any allegations as to procedure— whether of the presence of improper procedure or the absence of proper procedure — must be raised by timely objection or by a timely posttrial motion.
 
 Wilson v. State Dep’t of Human Res., 527
 
 So.2d 1322, 1325 (Ala.Civ.App.1988).
 

 Finally, the mother notes that the juvenile court made findings of fact, but, she says, the record on appeal contains no competent evidence relating to her. To the contrary, the juvenile court heard testimony from both DHR caseworkers as to the mother’s history with the children and with these proceedings. In addition to testifying to the facts discussed earlier in this opinion, the DHR caseworkers testified that the mother frequently failed to attend scheduled visitation sessions with the children over the preceding three years and that DHR had finally canceled visitation entirely in April 2009 when the mother failed to attend an ISP meeting that was scheduled at a time she herself had requested. After that missed meeting, the mother was to contact DHR to schedule another meeting, which she never did. It is settled that a trial court may conduct a trial without violating a party’s rights when that party voluntarily absents himself or herself from the proceedings.
 
 M.C. v. E.E.,
 
 816 So.2d 483, 486 (Ala.Civ.App.2001);
 
 Calhoun v. State,
 
 530 So.2d 259, 262 (Ala.Crim.App.1988);
 
 see also In re Dependency of E.P.,
 
 136 Wash.App. 401, 406-07, 149 P.3d 440, 443-44 (2006) (finding no violation of due process when a trial was held in spite of a party’s voluntary absence). In this case, the trial court did just that, and it determined from the evidence that termination of the mother’s parental rights was proper.
 

 As the mother notes, termination of parental rights is a serious matter. A parent’s “right to be a parent” to his or her children is fundamental, and a court should terminate such rights “only in the most egregious of circumstances.”
 
 See Ex parte Beasley,
 
 564 So.2d 950, 952 (Ala.1990);
 
 L.M. v. D.D.F.,
 
 840 So.2d 171, 179 (Ala.Civ.App.2002). “Termination of a parent’s rights in a child is an extremely drastic measure, and once done, we know of no means of reinstating these rights.”
 
 East v. Meadows,
 
 529 So.2d 1010, 1011-12 (Ala.Civ.App.1988). However, given the procedural posture of this case, including the deliberate choices of the mother and her attorneys concerning the trial and the mother’s attorneys’ failure to object at trial or to file a postjudgment motion, the only possible result of the mother’s appeal from the juvenile court’s judgment is affir-mance.
 
 See D.A.,
 
 976 So.2d at 505.
 

 The father’s sole contention on appeal is that the juvenile court erred in terminating his parental rights because, he says, DHR failed to present clear and convincing evidence to support termination. Because the termination proceedings were initiated by DHR in May 2009, this case is governed by the Alabama Juvenile Justice
 
 *1256
 
 Act of 2008 (“AJJA”), Ala.Code 1975, § 12-15-101 et seq., which became effective on January 1, 2009. The termination of parental rights is governed by Article 3 of the AJJA, § 12-15-301 et seq.
 

 The AJJA sets forth grounds for termination of parental rights at § 12-15-319(a), which provides, in pertinent part:
 

 “If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child,
 
 or
 
 that the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
 

 (Emphasis added.) That section further specifies that, in making its determination whether to terminate parental rights, a juvenile court is to consider factors including, but not limited to, those set out in 12 numbered subsections. Subsection (2) lists, among other things, excessive use of alcohol or controlled substances “of a duration or nature as to render the parent unable to care for needs of the child.” Subsection (7) allows a termination of parental rights when “reasonable efforts by the Department of Human Resources ... leading toward the rehabilitation of the parents have failed.” Subsection (9) lists, among other things, “[fjailure by the parents to provide for the material needs” of the children. Subsection (11) lists “[failure by the parents to maintain consistent contact or communication” with the children.
 

 “Clear and convincing” evidence has been defined, by reference to similar terms used in other procedural contexts, as “ ‘ “ ‘[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.’ ” ’ ”
 
 M.E. v. Shelby County Dep’t of Human Res.,
 
 972 So.2d 89, 92-93 (Ala.Civ.App.2007) (quoting
 
 Ex parte T.V.,
 
 971 So.2d 1, 9 (Ala.2007), quoting in turn
 
 L.M. v. D.D.F.,
 
 840 So.2d 171, 179 (Ala.Civ.App.2002), quoting in turn Ala.Code 1975, § 6-11-20(b)(4)).
 

 The standard of appellate review of a child-custody judgment based on ore tenus evidence is deferential: “Matters of dependency and child custody are within the discretion of the trial court. Where ore tenus evidence is presented, the judgment of the trial court is presumed correct and will be reversed on appeal only upon a showing that it was plainly and palpably wrong.”
 
 F.G.W. v.
 
 S.W., 911 So.2d 1, 5 (Ala.Civ.App.2004);
 
 see also Ex parte State Dep’t of Human Res.,
 
 834 So.2d 117, 120-21 (Ala.2002).
 
 [3]
 
 Further, “[i]n a juvenile proceeding to determine custody of a child, the trial court has wide latitude to decide which evidence it will consider, and the weight to be afforded the evidence is a matter of judicial discretion” in determining whether to terminate parental rights.
 
 G.L. v. State Dep’t of Human Res.,
 
 646 So.2d 81, 84 (Ala.Civ.App.1994). This standard of appellate review governs our consideration of the father’s appeal because, as we noted above, a hearing was held in June 2009. At that hearing, the father and two DHR caseworkers testified and the GAL gave her recommendation.
 

 In addition to admitting most of the facts we noted earlier in this opinion, the father testified that he knew only one of the birth dates of the seven children he
 
 *1257
 
 had had with the mother. Although five of the children were in the custody of their maternal grandmother and the father still was permitted visitation with them, he rarely had provided any money for their support in the seven years following their placement with the maternal grandmother. Although the father was not incarcerated and was working from the time of DHR’s first placement of S.D. in 2006 until July 2008, he apparently made minimal efforts to contact or support either child during that time; he testified that while he was incarcerated from July 2008 to January 2009, he could have contacted DHR by telephone and by mail, but he apparently made no effort to do either. The father admitted that he was either abusing illegal drugs or in jail from at least July 2008 until three weeks before the June 2009 trial.
 

 A DHR caseworker testified that the children, who by the time of trial had lived most of their fives together with the same foster family, were flourishing in their current environment. The caseworker hoped that the foster family would be successful in adopting the children. The GAL cited the same factors in recommending termination of each parent’s parental rights.
 

 Arguably in the father’s favor was his testimony that he hoped and expected to remain productive and drug-free following his completion of the inpatient drug-rehabilitation program he was attending at the time of trial; however, he had previously attended and completed a similar, but less intensive, outpatient program, only to relapse almost immediately. Weighing against that evidence was evidence indicating that the father had been attending the new program for only three weeks by the time of trial, and any long-term success he might have was a matter of speculation— speculation tempered by his long history of drug use and repeated incarceration. Also arguably in the father’s favor was evidence indicating that the children had responded well to him, and there were no allegations that the father had ever been abusive to any of his children. In contrast to that, the DHR caseworker testified that the children had bonded well with their foster parents.
 

 Finally, DHR investigated relative resources for placement of the children. Every relative DHR contacted, except the paternal grandmother, expressed an unwillingness to care for the children; the paternal grandmother, however, had a history of her own with DHR and would not likely have been approved. Further, she did not attend the June 2009 hearing.
 

 Given the evidence presented to the juvenile court and the deferential standard of appellate review that governs our consideration of this case, we cannot say that the juvenile court did not hear evidence that reasonably could have produced in its mind a firm conviction as to each essential element of DHR’s claims and a high probability as to the correctness of its conclusion that the children’s best interests would be served by the termination of the father’s parental rights. Based upon the foregoing facts and authorities, we affirm the judgments of the juvenile court.
 

 2080924 — AFFIRMED.
 

 THOMPSON, P.J., concurs.
 

 BRYAN, THOMAS, and MOORE, JJ., concur in the result, without writings.
 

 2080925 — AFFIRMED.
 

 THOMPSON, P.J., and MOORE, J„ concur.
 

 BRYAN and THOMAS, JJ., concur in the result, without writings.
 

 [1]
 

 . The record on appeal in this case included only pleadings and reports by DHR and a transcript of the June 2009 hearing.
 

 [2]
 

 . The same attorney is representing the mother on appeal. Although the mother’s appellate brief and the record are unclear on the point, it appears, and we assume, that this attorney is now representing the mother with respect to both children.
 

 [3]
 

 . The AJJA does not discuss standards of appellate review. Therefore, earlier caselaw on the point remains controlling.