WINDOM, Judge.
Pursuant to a plea agreement with the State, David Charles Herring, a convicted sex offender, pleaded guilty to establishing a residence or other living accommodation where a minor resides, a violation of § 15-20-26(c), Ala.Code 1975, a part of the Community Notification Act, § 15-20-20 et seq., Ala.Code 1975 (“the CNA”). He was sentenced, pursuant to the plea agreement, to three years in prison. The circuit court suspended the sentence and placed Herring on probation for one year. Before pleading guilty, Herring expressly reserved the right to appeal the circuit court’s denial of his pretrial motion to dismiss the indictment against him[1] on the ground that §§ 15 — 20—26(c)(3) and (c)(4), Ala. Code 1975,[2] are unconstitutional.
The record indicates that in 1997, Herring was convicted of sexual abuse in the first degree, see § 13A-6-66, Ala.Code 1975.[3] The victim was his 10-year-old niece who was residing with him and his wife at the time. The record also reflects that between 1999 and 2009, Herring reported his residence to authorities to be the residence where he and his wife lived with his two biological children, who were born in 1995 and 1998, respectively.
Herring argues on appeal, as he did in his motion to dismiss, that §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, are unconstitutional because they violate his rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution. He contends that he has a fundamental right to “ ‘personal choice in matters of marriage and family life’ ” (Herring’s brief, at 20 (quoting Moore v. City of East Cleveland, 431 *620 U.S. 494, 499, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), quoting in turn, Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 639, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974))), and that §§ 15-20-26(e)(3) and (c)(4), Ala.Code 1975, unconstitutionally infringe on that right by prohibiting him from residing with his biological children. He also contends that he is being treated differently from other similarly situated sex offenders in violation of equal protection. According to Herring, §§ 15-20-26(e)(3) and (c)(4), Ala.Code 1975, are not narrowly tailored to serve a compelling state interest and, thus, fail to satisfy the strict-scrutiny test required under both a due-process and equal-protection analysis of a statute that intrudes on a fundamental right.
On the other hand, the State argues that Herring has not clearly asserted a fundamental right that is being infringed by §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, because the State believes that although Herring has a fundamental right to be involved with his children’s lives, that right is not “unduly burdened by the CNA” and §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, only “impact[ ] ... his choice of where he can live.” (State’s brief, at 12.) The State further argues that Herring is not part of a suspect class and that he is not being treated differently than other similarly situated sex offenders in an unconstitutional manner. Thus, the State concludes, §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, must pass only the rational-basis test to be constitutional, and they are, according to the State, rationally related to a legitimate state interest.

Standard of Review

Generally, an appellate court’s “review of constitutional challenges to legislative enactments is de novo,” Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala.2001), and “acts of the legislature are presumed constitutional.” State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006). “[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of government.” Alabama State Fed. of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944). “[I]t is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of fundamental law.” Id. Moreover, “[t]he party mounting a constitutional challenge to a statute bears the burden of overcoming [the] presumption of constitutionality.” Holmes v. Concord Fire Dist., 625 So.2d 811, 812 (Ala.Civ.App.1993).
“If the challenged government action [infringes upon] a fundamental right, ... a court will review that challenged action applying strict scrutiny.” Price-Cornelison v. Brooks, 524 F.3d 1103, 1109 (10th Cir.2008) (citations omitted). Under the strict-scrutiny analysis, a statute that infringes upon a fundamental right is presumed to be unconstitutional, and the State bears the burden “to prove that the [infringement] ‘furthers a compelling interest and is narrowly tailored to achieve that interest.’ ” Citizens United v. Federal Election Comm’n, 558 U.S. 310, -, 130 S.Ct. 876, 898, 175 L.Ed.2d 753 (2010) (quoting Federal Election Comm’n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 464, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007)).

Analysis

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall “deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal *621 protection of the laws.” The United States Supreme Court has recognized that the Due Process Clause “guarantees more than fair process, and the ‘liberty’ it protects includes more than the absence of physical restraint.” Washington v. Glucksberg, 521 U.S. 702, 719, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). The clause includes a substantive component that “provides heightened protection against government interference with certain fundamental rights and liberty interests,” id. at 720, and “forbids the government to infringe upon certain ‘fundamental’ liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.” Reno v. Flores, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The Equal Protection Clause requires “that all persons similarly situated should be treated alike,” City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), but “does not compel uniformity in the face of difference.” State v. Spurlock, 393 So.2d 1052, 1056 (Ala.Crim.App.1981). In other words, the Equal Protection Clause
“does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.”
Hayes v. Missouri, 120 U.S. 68, 71-72, 7 S.Ct. 350, 30 L.Ed. 578 (1887).
Section 15-20-26(e), Ala.Code 1975, provides:
“(c) No adult criminal sex offender shall establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, an adult criminal sex offender may reside with a minor if the adult criminal sex offender is the parent, grandparent, or stepparent of the minor, unless one of the following conditions applies:
“(1) The adult criminal sex offender’s parental rights have been or are in the process of being terminated as provided by law.
“(2) The adult criminal sex offender has been convicted of any criminal sex offense in which any of the offender’s minor children, grandchildren, or stepchildren were the victim.
“(3) The adult criminal sex offender has been convicted of any criminal sex offense in which a minor was the victim and the minor resided or lived ■with the offender at the time of the offense.
“(4) The adult criminal sex offender has ever been convicted of any criminal sex offense involving a child, regardless of whether the offender was related to or shared a residence with the child victim.”[4]
“Residence” is defined in Black’s Law Dictionary 1335 (8th ed. 2004), in relevant part, as:
“The act or fact of living in a given place for some time ... The place where one actually lives, as distinguished from a domicile ... Residence usu[ally] just means bodily presence as an inhabitant in a given place; domicile usu[ally] requires bodily presence plus an intention to make the place one’s home. A person thus may have more than one residence *622 at a time but only one domicile.... A house or other fixed abode; a dwelling.”
In Sellers v. State, 935 So.2d 1207, 1213 (Ala.Crim.App.2005), this Court defined the term “living accommodation” in § 15-20-26(c), Ala.Code 1975, as “any overnight lodging, either temporary or permanent.”[5]
“The United States Supreme Court has established two tests to determine whether a statute draws a classification which violates the Equal Protection Clause of the Fourteenth Amendment or whether that statute denies a person substantive due process of law. The Court applies the ‘strict scrutiny test’ where the classification is based on ‘suspect criteria’ or affects some fundamental right. The traditional indicia of a suspect class are: (1) A class determined by characteristics which are solely an accident of birth, Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (197[3]); and (2) A class ‘saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process,’ San Antonio [Independent] School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1972). The classifications which the United States Supreme Court has held are suspect have been drawn along racial lines, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or were based on an individual’s alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The Court has recognized as fundamental, the right to vote and to associate freely, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968); the right to travel interstate, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and those familial rights referred to supra which fall within a recognized ‘zone of privacy.’ [When the] case involves neither a ‘suspect class’ nor a ‘fundamental right,’ the rational basis test is the proper test to apply to either a substantive due process challenge or an equal protection challenge.” [6]
Gideon v. Alabama State Ethics Comm’n, 379 So.2d 570, 573-74 (Ala.1980). See also Hutchins v. DCH Reg. Med. Ctr., 770 So.2d 49 (Ala.2000).
A “ ‘[substantive due process’ analysis must begin with a careful description of the asserted right, for ‘[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.’ ” Reno, 507 U.S. at 302 (quoting *623 Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Similar restraint is required under an equal-protection analysis. See Moore v. City of East Cleveland, 431 U.S. 494, 503, n. 10, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Fundamental rights are only those “rights and liberties which are, objectively, ‘deeply rooted in this Nation’s history and tradition’ ” and “ ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if they were sacrificed!)]’ ” Glucksberg, 521 U.S. at 720-21 (citations omitted). Thus, “[ajppropriate limits on substantive due process come not from drawing arbitrary lines but rather from careful ‘respect for the teachings of history (and), solid recognition of the basic values that underlie our society.’ ” Moore, 431 U.S. at 503 (quoting Griswold v. Connecticut, 381 U.S. 479, 501, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Harlan, J., concurring)).
There is no doubt that parental rights are fundamental. See E.P, v. Etowah County Dep’t of Human Res., 42 So.3d 1250, 1255 (Ala.Civ.App.2010) (“A parent's ‘right to be a parent’ to his or her children is fundamental.” (citations omitted)). The United States Supreme Court “has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.” Cleveland Bd. of Educ. v. LaFleur, 414 U.S. at 639-40. See also Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (“[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment.”); Quilloin v. Walcott, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) (“[T]he relationship between parent and child is constitutionally protected.”). Such freedom of personal choice necessarily includes the right “to marry, establish a home and bring up children,” Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and the right to make choices “concerning family living arrangements.” Moore, 431 U.S. at 499 (“A host of cases ... have consistently acknowledged a ‘private realm of family life which the state cannot enter’ ” and “when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation.” (citations omitted)).
The sanctity of the family has always been protected by the Constitution “because the institution of the family is deeply rooted in this Nation’s history and tradition.” Moore, 431 U.S. at 503. As a plurality of the United States Supreme Court explained in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000):
“[T]he interest of parents in the care, custody, and control of their children[ ] is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399, 401 (1923), we held that the ‘liberty’ protected by the Due Process Clause includes the right of parents to ‘establish a home and bring up children’ and ‘to control-the education of their own.’ Two years later, in Pierce v. Society of Sisters, 268 U.S. 510, 534-535 (1925), we again held that the ‘liberty of parents and guardians’ includes the right ‘to direct the upbringing and education of children under their control.’ We explained in Pierce that ‘[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to *624 recognize and prepare him for additional obligations.’ Id., at 535. We returned to the subject in Prince v. Massachusetts, 321 U.S. 158 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. ‘It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.’ Id., at 166.
“In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651 (1972) (‘It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children “come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements” ’ (citation omitted)); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972) (‘The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition’); Quilloin v. Walcott, 434 U.S. 246, 255 (1978) (‘We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected’); Parham v. J.R., 442 U.S. 584, 602 (1979) (‘Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course’); Santosky v. Kramer, 455 U.S. 745, 753 (1982) (discussing ‘[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child’); [Washington v.] Glucksberg, [521 U.S. 702,] 720 [ (1997)] (‘In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the “liberty” specially protected by the Due Process Clause includes the righ[t] ... to direct the education and upbringing of one’s children’ (citing Meyer and Pierce)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.”
530 U.S. at 65-66.
Contrary to the State’s contention, Herring does not merely have a right “to be involved in his children’s lives” (State’s brief, at 12); he has a fundamental right to make decisions regarding the care, custody, and control of his children. Thus, §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, do not merely “inconvenience” Herring in exercising his fundamental right as a parent (State’s brief, at 13), they directly infringe on that right by removing his freedom of choice regarding family matters. Under §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, Herring is prohibited from choosing to reside with his children. See Martinez v. Goddard, 521 F.Supp.2d 1002, 1006 (D.Ariz.2007) (“Fundamental rights include the right to marry, the right to live with family, the right to marital privacy, and the right of parents to direct their children’s upbringing and education.”); see also Stanley v. Illinois, 405 U.S. 645, 651-52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (“The private interest here, that of man in the children he has sired and raised, undeniably warrants deference and, absent a *625 powerful countervailing interest, protection. ... [A father’s] interest in retaining custody of his children is cognizable and substantial.”). Therefore, because §§ 15-20 — 26(c)(3) and (c)(4), Ala.Code 1975, directly infringe on Herring’s fundamental right as a parent, this Court must apply the strict-scrutiny test to determine whether those sections violate Herring’s due-process and equal-protection rights.
Under the strict-scrutiny test, a statute must be “narrowly tailored to serve a compelling state interest,” Reno, 507 U.S. at 302, and must be “the least restrictive alternative” available for accomplishing that interest. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 51, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). See also Blevins v. Chapman, 47 So.3d 227, 231 (Ala.2010) (“Statutes that infringe upon fundamental rights or that burden ‘suspect classes’ ‘are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.’ City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985).”); G.P. v. Houston County Dep’t of Human Res., 42 So.3d 112, 122 (Ala.Civ.App.2009) (“A parent has a fundamental constitutional right to the care, custody, and control of his or her child, which the government cannot extinguish unless required to protect a compelling governmental interest and unless ‘less drastic measures would be unavailing.’ Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976).”).
Herring concedes on appeal, as he did in the circuit court, that the State has a compelling interest in protecting the welfare of children and specifically ensuring that children are protected “from the danger [of] recidivism by convicted criminal sex offenders” (Herring’s brief, at 23), and, indeed, it is well settled that “the state has a compelling interest in protecting its children from harm.” Ex parte M.J.W., 62 So.3d 531, 536 (Ala.Civ.App.2010). See also Prince v. Massachusetts, 321 U.S. 158, 165, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (state has interest in protecting “the welfare of children” and ensuring “that children be both safeguarded from abuses and given opportunities for growth into free and independent well-developed men and citizens”). In § 15-20-20.1, Ala. Code 1975, the legislature expressly recognized “the danger of recidivism posed by criminal sex offenders” and explained that its purpose in enacting the CNA was “to protect the public, especially children, from convicted criminal sex offenders.” Thus, there is a compelling state interest behind §§ 15-20-26(c)(3) and (c)(4), Ala. Code 1975.
Herring argues, however, that §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, are unconstitutional because they are not narrowly tailored to serve the compelling interest of protecting children from sex offenders because less restrictive alternatives are available and, in fact, are in place to protect Alabama’s children. Specifically, Herring argues that the Alabama Juvenile Justice Act, see § 12-15-101 et seq., Ala.Code 1975,[7] is sufficient to protect children. He also argues that *626 §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, unconstitutionally treat him differently than other similarly situated sex offenders based solely on the age and/or location of his victim. Herring’s arguments are unpersuasive.
Sections 15-20-26(c)(3) and (c)(4), Ala. Code 1975, do not, as Herring argues, provide for a “blanket prohibition” against sex offenders living with minors. (Herring’s brief, at 23.) Rather, § 15-20-26(c), Ala.Code 1975, specifically allows sex offenders to live with their children, stepchildren, or grandchildren, and §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, prohibit only a subset of sex offenders from doing so. That subset includes only those offenders who have offended against a child under the age of 12 or a minor who was residing with the offender at the time of the offense. Given the high rate of recidivism among sex offenders and the limited subset of sex offenders to which §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, apply, §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, are clearly narrowly tailored to protect children only from those sex offenders who pose the highest risk to them, i.e., those who have demonstrated an obvious preference for young children under the age of 12, or a preference for minors who are in the closest, easiest, and most vulnerable positions when residing with the offender.
In addition, this Court does not agree with Herring that a less restrictive alternative to protecting children from sex offenders is found in the Alabama Juvenile Justice Act. Section 12-15-101(a), Ala. Code 1975, provides that “[t]he purpose of this chapter is to facilitate the care, protection, and discipline of children who come under the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security.” (Emphasis added.) Section 12-15-101(b), Ala.Code 1975, includes a list of goals of the Juvenile Justice Act, the first of which is to “preserve and strengthen the family of the child whenever possible.” § 12-15-101(b)(1), Ala.Code 1975. In addition, § 12 — 15—101(b)(8), Ala.Code 1975, specifically states that the goals must be achieved “with a preference at all times for the preservation of the family.” The Juvenile Justice Act has a clear preference to preserve the family unit, is limited to only those children under the juvenile court’s jurisdiction, and, as Herring points out, gives “broad discretion” to courts to make a determination regarding the best interests of the child. (Herring’s brief, at 25.) Section 15-20-26(c), AIa.Code 1975, is clearly necessary to prevent the exposure of Alabama’s children to preferential sexual predators in all cases, not just in those cases that come within the jurisdiction of the juvenile court or in which the juvenile court makes a finding regarding the best interest of the child.
Finally, Herring is not being treated differently than other similarly situated sex offenders. Herring is being treated the same as all sex offenders in the same circumstances as he, i.e., the same as all sex offenders who offended against a child under the age of 12 or offended against a minor residing with them at the time of the offense. Contrary to Herring’s apparent contention, all sex offenders are not alike. The high risk of recidivism of sex offenders is most alarming in those preferential offenders who, as noted above, prey on young children under the age of 12 or on the closest, easiest, and most vulnerable targets, i.e., those minors residing with the offenders. “The Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently from the others. The test is whether the difference in treatment is an *627 invidious discrimination.” Spurlock, 393 So.2d at 1056. The State here has clearly drawn a line differentiating between types of sex offenders based on the age and/or location of the victims. The line drawn does not reflect invidious discrimination, but reflects, as noted above, a narrow tailoring to protect Alabama’s children from those offenders who pose the highest risk to them.
Although it is a rare case indeed that a statute will survive strict-scrutiny analysis, this is one of those cases. This Court holds that §§ 15-20-26(c)(3) and (c)(4), Ala.Code 1975, are narrowly tailored to serve a compelling state interest and do not 'unconstitutionally infringe on Herring’s rights to due process or equal protection under the law.
“A parent has a fundamental liberty interest in the care, custody, and management of his or her child. Santosky v. Kramer, 455 U.S. 745, 753 (1982). However, this interest is not absolute; it ‘is limited by the compelling government interest in the protection of children— particularly where the children need to be protected from their own parents.’ Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir.1997).”
Ex parte M.D.C., 39 So.3d 1117, 1128 (Ala.2009).
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WELCH, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Herring filed two motions to dismiss. He expressly reserved the right to appeal the denial of the second motion only.

. Although he was charged with only a single offense, Herring’s actions violated both § 15-20-26(c)(3) and § 15-20-26(c)(4), Ala.Code 1975.

. The record does not specify under what subsection Herring was convicted. However, this Court notes that § 13A-6-66, Ala.Code 1975, was amended effective July 1, 2006, to remove subsection (a)(3) (the sexual abuse of a child less than 12 years old) and replaced that subsection with § 13A-6-69.1, Ala.Code 1975, which increased that crime from a Class C to a Class B felony.

. Section 15-20-21(5), Ala.Code 1975, defines "criminal sex offense involving a child,” in relevant part, as “[a] conviction for any criminal sex offense in which the victim was a child under the age of 12."

. Subsequendy, in K.E.W. v. T.W.E., 990 So.2d 375 (Ala.Civ.App.2007), the Alabama Court of Civil Appeals expanded the definition of the term “living accommodation” to include even
"an arrangement whereby the criminal sex offender, who is married to the child’s mother, financially provides for the child and the child's mother; eats all of his meals at the child’s home; cultivates a garden at the home with the child; and is present in the child's home during all of his waking hours except when working ... [because t]hese activities generally allow the criminal sex offender protracted time with the child in a private setting and expose the child to the risk of recidivism the statute was designed to prevent.”
990 So.2d at 382.

. An intermediate level of review has also been recognized in equal-protection cases involving "quasi-suspect” classes. See generally Clark v. Jeter, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); State v. C.M., 746 So.2d 410 (Ala.Crim.App.1999); and M.V.S. v. V.M.D., 776 So.2d 142 (Ala.Civ.App.1999).

. Herring also refers to the former Child Protection Act, see former § 26-18-1 et seq., Ala. Code 1975. However, the Child Protection Act was repealed effective January 1, 2009, and its various provisions placed in the current Juvenile Justice Act, which became effective January 1, 2009. Although the majority of the time Herring was in violation of § 15-20-26(c), the Child Protection Act and the former Alabama Juvenile Justice Act, see former § 12-15-1 et seq., Ala.Code 1975, were in effect, for purposes of this opinion and Herring’s specific arguments on appeal, the current Juvenile Justice Act is substantially similar to the former Juvenile Justice Act and former Child Protection Act.