DONALDSON, Judge.
The Montgomery County Department of Human Resources (“DHR”) and J.B. (“the child”), a minor, by and through J.T., the child’s guardian ad litem, separately appeal from a judgment of the Montgomery Juvenile Court (“the juvenile court”) denying DHR’s petition to terminate the parental rights of N.B. (“the mother”) to the child despite N.B.’s express consent to the termination of her parental rights to the child. We affirm.

Facts and Procedural History

The child, born in June 2003, is one of three children born to the mother. I.B., the child’s sister, was born in August 1996, and Jo.B., the child’s brother, was born in May 1998. The child’s father died in 2008. According to uncontested documents in the record, the mother lost custody of the children in 2005. Between 2005 and 2010, the child and her siblings lived with various relatives in Alabama and in Ohio. At *1207 some point in 2010, the child -and her siblings moved from Ohio to live with their maternal grandparents in; Montgomery. In June 2010, I.B. gave birth to S.B., the child’s niece. Pursuant to a request of the maternal grandmother, DHR removed I.B. from the home in August.2010 and placed her in foster care with D.C. In October 2010, I.B. reported, to a school counselor that she had been sexually abused while in the custody of the maternal grandparents. DHR then removed the child, Jo.B.,and S.B. from the maternal grandparents’ home and. placed . them in foster care. DHR placed the child in foster care with D.C. . ,
On November 8, 2011, DHR .filed a petition in the juvenile court to terminate the mother’s parental rights to the child, who was then eight years old. DHR did not petition to terminate the mother’s parental rights to I.B., who was then 15 years old, or to Jo.B., who was thén 13 years Old, because, according to testimony, those children did not wish to be adopted. The child, however, had expressed a desire to be adopted. The juvenile court appointed an attorney for the mother and a guardian ad litem for the child. The juvenile court conducted a trial on DHR’s petition on October 30, 2013. In support of its petition, DHR presented the testimony of two witnesses: Kristi Kelley, a DHR social-service caseworker in the foster-care unit, and the mother.
Kelley testified that she began working on the case in October 2010 when the child was placed into DHR’s custody. She testified that she initially met with the mother in May 2011. Kelley testified that, at that meeting, the mother stated that she had been diagnosed with schizophrenia and admitted to using marijuana. Documents in the record also indicate that the mother had used cocaine. Kelley testified that she informed the mother at the initial meeting that, in order for her to regain custody of her children, she would be required to find a suitable’residence, to stop using drugs, and to seek treatment for her mental illness. Kelley testified that DHR provided the mother with a referral to the Lighthouse Counseling Center (“Lighthouse”) for drug treatment. She testified that the mother- initially participated in daily group sessions at Lighthouse. Kelley testified that drug screening of the mother conducted by Lighthouse staff had occasionally rendered positive results. Kelley testified that she also referred the mother to the Montgomery Area Mental Health Authority for mental-health treatment. DHR did not introduce into evidence any documentary evidence concerning the mother’s mental illness or her treatment for drug addiction. Kelley testified that, on the date of trial, the mother admitted to her that she continued to use drugs.
Kelley testified that DHR also offered the mother opportunities for visitation with her children and that the mother had telephoned and visited with the .children occasionally. Kelley testified that, althoúgh the mother had attended some scheduled Individualized Service Plan (“ISP”) meetings,. the mother’s attendance at those meetings was inconsistent. Kelley testified that, in her opinion, the mother loved her children but that the mother had informed Kelley that she was unable or unwilling to care for the children. Kelley testified that, during the three years the children had been in .DHR’s custody, the mother never expressed that she was willing or able to regain custody of the children.
Kelley testified that the child had been the victim of - sexual abuse and that DHR had been made aware of -allegations of sexual abusé occurring in the home when the child lived in Ohio. Kelley testified that the child had been diagnosed -with post- *1208 traumatic stress disorder, that the child had behavioral issues, that the child was taking medication, that the child received treatment from a psychiatrist, and that the child participated in counseling. Kelley testified that she had had conversations with the child concerning adoption and that the child looked forward to being adopted. She testified that an adoptable resource for the child had not been identified' at the time of the trial but that the child- had a strong bond with D.C., her foster parent. Kelley testified that D.C. had mentioned, but had not committed to, adopting the child.
Kelley testified that DHR had investigated several relatives of the child for possible placement, including T.W., a cousin who lived in Alabama, and P.M., an uncle who lived in Michigan. Kelley testified that T.W. reported in 2011 that she was not willing to serve as placement resource for the child. Kelley had not inquired further whether T.W. would reconsider serving as a placement resource for the child at the time of the trial. Kelley testified that P.M., who had four children living in his home, was not a viable potential placement option based on a home study conducted by the Michigan Department of Human Services at the request of DHR under the Interstate Compact on the Placement of Children (“ICPC”), codified at § 44-2-20 et seq., Ala.Code 1975. ' The ICPC home-study report concluded that P.M.’s home- was not adequate because there was not additional space for other children. That ICPC home-study report also indicated that P.M. was not willing to undergo the licensing process in order to qualify as a placement resource. Kelley testified that the mother provided no additional names for DHR to investigate for possible placement of the child. Kelley testified that I.B. had provided DHR with the name of a cousin who lived in Ohio but that that relative was unwilling- to accept custody of the child.
At trial, DHR introduced a document titled “Waiver of Parental Rights and Consent to Permanent Termination of Parental Rights and Adoption” (“the written consent”) signed under Oath by the mother; In the written consent, the mother attested that she was consenting to the termination of her parental rights to- the child; that she was not willing or able to assume parental responsibilities of the child; that she saw no hope of significant improvement in her circumstances in the foreseeable future; that, in her opinion, it would not be in the child’s best interest to continue in foster care; that she had read DHR’s petition to terminate her parental rights; that she had read the .written consent; that her attorney had read the written consent to her; that she had discussed the written consent with her attorney; that she was waiving and abandoning her rights to the child; and that she agreed with DHR’s position that it would be in the child’s best interest to be placed for adoption.
The mother also appeared at the trial as a witness. Under questioning from her attorney, the mother testified that she understood that the purpose of the proceeding was to terminate her parental rights to the child, that she had no objection to the proceeding, and that she consented to the termination of her parental rights to the child. The mother testified that she had discussed the written consent with her attorney, and she acknowledged that she had signed it.
Under questioning from the juvenile court, the mother testified that she had been diagnosed with schizophrenia, bipolar disorder, and depression in 2005. She testified that she had been treated by the Montgomery Area Mental Health Authority but that she had not consistently at *1209 tended her appointments and had not taken her prescribed medication for approximately one year. She testified that her children had been sent to Ohio to live with her half brother because she was not stable and because she was not able to obtain her own residence.. The mother •testified that.she was not employed but that she had worked in the past at fast-food restaurants, and for a telemarketing company. She was dismissed from the telemarketing company for getting into a fight. She testified that the highest level of education she had completed was the 9th grade.
Following the conclusion of the October 30, 2013, trial, the parties made multiple unsuccessful requests to the juvenile court for a ruling to be rendered and entered on DHR’s petition. On August 13, 2014, DHR filed a petition for a writ of mandamus in this court seeking an order directing the juvenile court to rule on DHR’s petition to terminate the mother’s parental rights. On October 1, 2014, this court entered an unpublished order granting DHR’s petition and directing the juvenile court “to issue an order as required by Rule 25, Ala. R. Juv. P.” Ex parte Montgomery Cnty. Dep’t of Human Res. (No. 2130923, Oct. 1, 2014), 194 So.3d 1003 (Ala.Civ.App.2014) (table). Rule 25(D), Ala. R. Juv. P., provides that,
“[a]t the close, of the dispositional phase, the juvenile court shall make its finding in writing_ In termination-of-parental-rights eases, the juvenile court shall make its finding by written order within 30 days of completion of the trial.”
We further note that § 12-15-320(a), Ala. Code 1975, provides that, in termination-of-parental-rights cases,, “[t]he trial court judge shall enter a final order within 30 days of the completion of the trial.”
On October 2, 2014, nearly one year after the termination trial, the juvenile court entered a detailed order with factual findings in which it denied DHR’s- petition to terminate the mother’s parental rights to the child. . The juvenile court determined that DHR failed to prove by clear and convincing evidence that grounds existed to terminate the mother’s parental rights. Specifically, the juvenile court found that, despite the mother’s written consent and oral testimony indicating that she consented to the termination of her parental rights to the child, DHR had failed to produce documentary evidence to support its position that the mother was mentally unable to care for the children. The juvenile court stated that the mother’s consent to the termination of her parental rights was unreliable due to the mother’s alleged-mental illness and that, citing this court’s decisions in C.C. v. State Dep’t of Human Res., 984 So.2d 447, 451 (Ala.Civ.App.2007), and S.D.P. v. U.R.S., 18 So.3d 936 (Ala.Civ.App.2009), the mother’s consent, alone, was not sufficient to satisfy DHR’s burden of proof to present clear and convincing evidence to support its petition. The juvenile Court further stated that the written consent signed by the mother did not address her alleged inability or unwillingness to care for the child. The juvenile- court- also found that DHR had failed to offer sufficient evidence concerning the child’s purported desire to be adopted.. The juvenile court determined that DHR had failed to present evidence of the reasonable, efforts it had made to reunite the child with the mother or to rehabilitate the mother, finding specifically that DHR had failed to present evidence regarding the mother’s use of illegal drugs, that DHR had failed to provide the mother with transportation .to her appointments at Montgomery Area Mental Health Authority, that DHR had not assisted the mother in her efforts to Obtain housing, and that DHR had not provided the mother with assistance in finding employment. The ju *1210 venile court also determined that DHR had failed to produce clear and convincing evidence showing that there were no placement resources that could serve as a viable alternative to termination of the mother’s parental rights.
The child’s guardian ad litem and DHR filed separate, timely motions to alter, amend, or vacate the judgment on October 14 and October 16, respectively. On October 24, 2014, the juvenile court, pursuant to Rule 1(B)(1), Ala. R. Juv. P., entered an order to extend the time period for ruling on the postjudgment motion by an additional 14 days. The juvenile court held a hearing on the postjudgment motions on November 6, 2014. On November 12, 2014, and November 13, 2014, respectively, the postjudgment motions were denied by operation of law without, a ruling from the juvenile court.[1] DHR filed a notice of appeal to this court on October 29, 2014, and the guardian ad litem filed a notice of appeal to this court on November 10, 2014. Both notices of appeal were filed prematurely but were held in abeyance pending the outcome of the postjudgment motions. See Rule 4(a)(5), Ala. R.App. P. This court consolidated. the appeals ex mero motu. The mother has not filed a brief on appeal.

Discussion

DHR and the guardian ad litem contend that the judgment of the juvenile court must be reversed because the judgment is contrary to clear and convincing evidence presented at.the trial. Our standard of review in proceedings to terminate a parent’s rights to a child is well settled.
“A juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) the court must properly consider and reject all viable alterna-fives to a termination of parental rights.”
B.M. v. State, 895 So.2d 319, 331 (Ala.Civ.App.2004) (citing Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990)). Section 12-15-319, Ala.Code 1975, provides, in pertinent part:
“(a) If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[ ] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[ ] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[ ]. In determining whether or not the parent[ ] [is] unable or unwilling to discharge [his or her] responsibilities to and for the child and to terminate the parental rights, the juvenile court shall consider the following factors including, but not limited to, the following:
“(1) That the parentf] ha[s] abandoned the child, provided that in these *1211 cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parent[ ].
“(2) Emotional illness, mental illness, or mental deficiency of the parent, or excessive use of alcohol or controlled substances, of a duration or nature as to render the parent unable to care for needs of the child.
“(7) That reasonable efforts by the Department of Human Resources or licensed public or private child care agencies leading toward the rehabilitation of the parent[ ] have failed.
“(12) Lack of effort by the parent to adjust his or her circumstances to meet the needs of the child in accordance with agreements reached, including' agreements reached with local departments of human resources or licensed child-placing agencies, in an administrative review or a judicial review.”
Our appellate courts have defined “clear and convincing evidence” as
“ ‘ “[ejvidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” ’ L.M. v. D.D.F., 840 So.2d [171,] 179 [(Ala.Civ.App.2002)] (quoting Ala.Code 1975, § 6-11-20(b)(4)). On appeal from ore tenus proceedings, this court presumes the correctness of the juvenile court’s factual findings. See J.C. v. State Dep’t of Human Res., 986 So.2d 1172 (Ala.Civ.App.2007). This court is bound by those findings if the record contains substantial evidence from which the juvenile court reasonably could have been clearly convinced of the fact sought to be proved. See Ex parte McInish, 47 So.3d 767 (Ala.2008) (explaining standard of review of factual determinations required to be based on clear and convincing evidence).”
C.C. v. L.J., 176 So.3d 208, 211 (Ala.Civ.App.2015). Additionally,
“ ‘[t]he evidence necessary for appellate affirmance óf a judgment based on a factual finding in the context of a ease in which the ultimate standard for a factual decision by the trial court is clear and convincing evidence is evidence that a fact-finder reasonably could find to clearly and convincingly [as clear and convincing is defined by § 25-5-81(c)] establish the fact sought to be proved.’ .
“KGS Steel[, Inc, v. McInish ], 47 So.3d [749,] 761 [ (Ala.Civ.App.2006) (Murdock, J., concurring in the result) ].
“... [T]hus, the appellate court must also look through a prism to determine whether there was'substantial evidence before the trial court to support a factual finding, based upon the trial court’s weighing of the - evidence, that would ‘produce in the mind [of the trial court] a firm conviction as to each element of the claim and a high probability as to the correctness of the conclusion.’ § 25-5-Sl(c), [Ala.Code 1975].”
Ex parte McInish, 47 So.3d 767, 778 (Ala.2008).[2]
Section 12-15-319 provides that if the required findings are made, the juvenile court “may” terminate parental rights. The term “may” leaves the decision to the discretion of the juvenile court. See Ex *1212 parte Mobile Cnty. Bd. of Sch. Comm’rs, 61 So.3d 292, 294 (Ala.Civ.App.2010) (“Ordinarily, the use of the word ‘may” indicates a discretionary or permissive act, rather than & mandatory act.”).' Furthermore, “[w]hen evidence is presented ore tenus, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented.” Ex parte Hayes, 70 So.3d 1211, 1215 (Ala.2011) (citing Blackman v. Gray Rider Truck Lines, Inc., 716 So.2d 698, 700 (Ala.Civ.App.1998)).
DHR and the guardian ad litem contend that the juvenile court erred in failing to hold that 'the mother’s written consent was sufficient to terminate the mother’s parental rights. The crux of the case presented by DHR in support of its petition was that the mother had provided an" unequivocal and unwavering consent to termination of her parental rights and that she did not contest DHR’s petition. In the written consent and in her testimony at trial, the mother stated that she was unwilling and unable to care for the child.- A parent’s knowing and voluntary consent to termination of - parental rights may serve as, evidence in favor of granting the termination petition; but consent to termination, alone, is not sufficient to support termination of parental rights under the Alabama Juvenile Justice, Act, Ala.Code 1975, § 12-15-101 et seq. We have held that the petitioning party and the juvenile court must comport with due process before accepting the parent’s consent to termination of parental rights. See C.C. v. State Dep’t of Human Res., 984 So.2d at 451. We have also held that .a consent to termination of parental rights may not be entered for the convenience of the parties. See S.D.P. v. U.R.S., supra. We also conclude that the petitioning party has the burden of proving by clear and convincing evidence that a parent’s consent to termination of parental rights has been voluntarily and knowingly made.
, In this case, the record before this court gives the appearance that the mother provided an unequivocal waiver of her parental rights. The juvenile court, however, had the distinct advantage of personally observing the mother while testifying. The juvenile court also received evidence indicating that the mother had been diagnosed with schizophrenia, bipolar disorder, and depression; that the mother had not sought treatment for her conditions for approximately one year; and that the mother’s highest level of education was completion of the 9th grade. After having observed the mother testify in open.court, the juvenile court, in its judgment, questioned the credibility of the mother’s oral testimony concerning her ability to consent and questioned the mother’s capacity to enter into the written consent. No additional evidence was presented to show that the mother, despite her mental illness, appreciated the consequences of her written consent or that she was competent to understand the purpose of the judicial proceedings. As we have noted, “[i]t is not necessary that there be a dispute or absolute contradiction in the testimony in order to invoke the ore tenus presumption. That presumption is grounded on the trial court’s superior position to evaluate the witnesses’ demeanor and 'credibility and assess the weight of their testimony.” Devan Lowe, Inc. v. Stephens, 842 So.2d 703, 706 (Ala.Civ.App.2002). The juvenile court evidently determined that the mother was not a credible witness and that the mother’s testimony concerning her consent was due to be weighed accordingly. See Bunn v. Bunn, 628 So.2d 695, 697 (Ala.Civ.App.1993)(“In determining the weight to be accorded testimony, ... the trial court *1213 may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief.”). Based upon the lack of credit the juvenile court afforded to the mother’s testimony, the court could have correctly determined that DHR failed to prove by clear and convincing evidence that the mother had the capacity to consent to the termination of her parental rights and that the written consent was voluntarily made. We are compelled to defer to the juvenile court’s determination on the issue of the mother’s credibility, and we will not disturb that aspect of the judgment on appeal.
DHR and the guardian ad litem contend that DHR produced clear and convincing evidence showing that grounds for termination of the mother’s parental rights did exist. We acknowledge that, perhaps because it relied Qn the mother’s purported consent to termination, DHR’s presentation of evidence in this case was less than usually expected in a termination case. At termination-of-parental-rights trials, DHR typically offers documentary evidence, such as ISP meeting, notes, drug-treatment records, drug-screen results, and mental-health records, as well as the testimony of mental-health professionals, among other relevant evidence. In the present case, in addition to the written consent, DHR offered only the oral testimony of Kelley and the mother. However, as noted above, the uncontested testimony established that the mother suffered from a mental illness that rendered her unwilling and unable to parent the child and that the mother continued to abuse drugs up to the date of trial. See § 12-15-319(a)(2). Thus, DHR established by clear and convincing evidente that grounds for termination existed.
The guardian ad litem contends that the juvenile court was presented with clear and convincing evidence showing that the mother had abandoned the child. See § 12-15-319(a)(l). Section 12-15-301(1), Ala.Code 1975, defines the term abandonment as:
“A voluntary and intentional relinquishment of the custody of a child by a parent, or a- withholding from the child, ■without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection', or the failure to claim the rights of a parent, or failure to perform the duties of a parent.”
Although the evidence established that the child had not been in the mother’s custody since 2005 and that DHR had had custody of the child since 2010, the mother frequently visited and communicated with the child. There was insufficient evidence in the record of abandonment.
The juvenile court, however, determined that DHR had failed to present clear and convincing evidence showing that DHR had made reasonable efforts to rehabilitate the mother. “[T]he efforts actually required by DHR in each case, whether the court is considering rehabilitation or reunification, depend on the particular facts of that case, the statutory obligations regarding family reunification, and the best interests of the child.” J.B. v. Jefferson Cnty. Dep’t of Human Res., 869 So.2d 475, 482 (Ala.Civ.App.2003). “Reasonable efforts” include, among other things, “efforts ... to make it possible for a child to return safely to the home of the child.” § 12-15-312(b),: Ala.Code 1975. In Kelley’s initial meeting with the mother in May 2011, DHR identified three particular issues that -prevented the, mother from assuming the proper parenting role of the child; Those issues included the mother’s unsuitable living arrangements, the mother’s use of controlled substances, and the mother’s mental illness. As part of the plan to rehabilitate the mother, DHR re *1214 ferred the mother to Lighthouse for drug treatment, referred the mother to the Montgomery Area Mental Health Association for treatment of her mental-health issues, and provided the mother with visitation. The mother began treatment at Lighthouse, but she did not cease using drugs. The mother also had attended appointments at the Montgomery Area Mental Health Association, but she discontinued her treatment there approximately one year before the trial. At trial, however, DHR did not present any evidence showing that it had offered the mother any assistance in locating suitable housing. Furthermore, DHR had failed to assist the mother in obtaining employment. Thus, the juvenile court could have properly concluded from the evidence that DHR failed to use reasonable efforts to rehabilitate the mother and to reunite her with the child.
Regarding the second prong of the test employed in determining whether to terminate parental rights, see B.M. v. State, 895 So.2d at 331 (citing Ex parte Beasley, 564 So.2d at 954), even assuming that DHR had satisfied the trial court that it had produced clear and convincing evidence showing that it had made reasonable efforts to rehabilitate the mother, the juvenile court would still have been required to determine that there were no viable alternatives to termination of the mother’s parental rights. This court has routinely recognized that
“[pjarents and their children share a liberty interest in continued association with one another, i.e., a fundamental right to family integrity. Santosky v. Kramer, [455 U.S. 745 (1982) ]. A state may only interfere with that right to achieve a compelling governmental objective using the most narrowly tailored means available. Roe v. Conn, 417 F.Supp. 769 (M.D.Ala.1976).”
J.B. v. DeKalb Cnty. Dep’t of Human Res., 12 So.3d 100, 115 (Ala.Civ.App.2008). We have further stated that
“restricted visitation rights can be a viable alternative to termination of parental rights when it appears that a wayward parent cannot be rehabilitated but still shares a deep and beneficial emotional relationship with his or her children. See, e.g., D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion). In such cases, permanently depriving children of association with a parent by terminating parental rights could do more harm than good to the children. Id.”
T.D.K v. L.A.W., 78 So.3d 1006, 1011 (Ala.Civ.App.2011).
The juvenile court made the following factual finding in its judgment:
“[Kelley] testified that it was obvious to her that the Mother loves her children and that the Mother maintained contact with [thé child and her] siblings. Specifically, she testified that the Mother does the girls’ hair and maintains contact with all of her children at the home of [D.CJ. [Kelley] testified that she was of the opinion that it would be detrimental for [the children] to not have contact with the Mother.”
The mother has maintained consistent contact and communication with the child and her siblings while they have been in the care of D.C. There was no evidence suggesting that the mother had abused the child or her siblings, and DHR did not present any evidence indicating that maintaining visitation with the mother would harm the child. Because there was clear and convincing evidence indicating that the child shared an emotional bond with the mother and that
“the best interests of the [child] would be served by maintaining visitation with *1215 the mother, the juvenile court was required-to “weigh the advantage of [maintaining visitation with the mother] against the advantage of termination and placement for adoption with permanent fit parents, and to decide which' of th[o]se alternatives would be in the [child’s best interests].’ ”
C.M. v. Tuscaloosa Cnty. Dep’t of Human Res., 81 So.3d 891, 398 (Ala.Civ.App.2011) (quoting D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 95 n. 17 (Ala.Civ.App.2003) (plurality opinion)).
The juvenile court was also concerned with the lack of a permanency plan for the child. The child, a victim of abuse, ■had been diagnosed with- post-traumatic stress disorder. She-exhibited emotional and behavioral problems for which she had been receiving treatment and counseling. DHR had placed her in a therapeutic foster home with D.C. According to Kelley, D.C. had mentioned serving as an adoptive resource for the child but, as of the date of trial, had not committed to adoption. DHR had not identified any other adoptive resource for the child. Although the lack of an identified adoptive resource alone does not necessarily preclude termination of parental rights, it is a factor that a juvenile court may consider in assessing whether to terminate parental rights. As we concluded in C.M.,
“[b]ecause of the uncertainty regarding the children’s prospects for adoption, we conclude that the record does not contain clear and convincing evidence indicating that the children would achieve permanency if the mother’s parental rights were terminated. Accordingly, the desire for permanency in this case cannot override the clear and convincing evidence indicating that maintaining visitation with the mother is in the children’s best interests.”
81 So.3d at 398. Thus, we conclude that the juvenile court had a sustainable basis to determine that DHR had failed to present clear and convincing evidence demonstrating that no viable alternatives to termination existed.
We note that Kelley, the DHR caseworker, testified that the child had told her that she wanted to' be adopted. Although the juvenile court erroneously determined in its judgment that no evidence was presented to show the child’s desire to be'adopted, there is nó indication that a finding to the contrary would have changed the juvenile court’s rationale for denying DHR’s petition to terminate the mother’s parental rights.
“We are not allowed to substitute our judgment for that of the trial court, even when this court might have reached a different result, unless the trial court’s resolution of the facts is plainly and palpably wrong.” J.B. v. Cleburne Cnty. Dep’t of Human Res., 992 So.2d 34, 39 (Ala.Civ.App.2008).
“ ‘When addressing the inability of an appellate court to. reweigh the evidence and substitute its judgment for that of the trial court, our supreme court recognized:
“ ‘ “The trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suited — factfinding.”
“‘Ex parte R.T.S., 771 So.2d 475, 477 (Ala.2000).’
“J.B. v. Cleburne County Dep’t of Human Res., 992 So.2d 34, 39-40 (Ala.Civ.App.2008).”
J.L. v. W.E., 64 So.3d 631, 635 (Ala.Civ.App.2010).
*1216 Accordingly, for the foregoing reasons, we conclude that the judgment of the juvenile court is due to be affirmed.
2140109 — AFFIRMED.
2140118 — AFFIRMED.
PITTMAN and MOORE, JJ., concur.
THOMAS, J., dissents, with writing, which THOMPSON, P.J., joins.

. Rule 1(B), .Ala. R. Juv. P., provides that, absent an extension permitted under the rule, postjudgment motions filed in the juvenile courts “shall not remain pending for more than 14 days” and that the “failure by the juvenile court to render an order disposing of any pending postjudgment motion within the time permitted hereunder, or any' extension thereof, shall constitute denial of such motion as of the date of the expiration of the period.”
The 14-day extension to rule on the guardian ad litem's postjudgment motion expired on Tuesday, November 11, 2014, Veterans Day. Therefore, the guardian ad litem’s motion was deemed denied on Wednesday, November 12, 2014. See Williamson v. Fourth Ave. Supermarket, Inc., 12 So.3d 1200, 1203-04 (Ala.2009)(construing analogous language in Rule 59.1, Ala. R. Civ. P.); see also Rule 6, Ala. R. Civ. P.

. “Clear and convincing evidence” is defined the same in § 6-ll-20(b)(4), Ala.Code 1975, the statute referenced in the above quote’ from C.C. v. L.J. supra, and in § 25-5-81(c), Ala.Code 1975, the statute referenced in the above quote from Ex parte McInish, supra.