**R.D.**

**v.**

**COFFEE COUNTY DEPARTMENT OF HUMAN RESOURCES.**

**2140571 and 2140572.**

Court of Civil Appeals of Alabama.

March 18, 2016.

Carmen F. Howell, Enterprise, for appellant.

Luther Strange, atty. gen., and Sharon E. Ficquette, chief legal counsel, and Karen P. Phillips, asst. atty. gen., Department of Human Resources, for appellee.

MOORE, Judge.

R.D. ("the mother") appeals from separate judgments of the Coffee Juvenile Court ("the juvenile court") terminating her parental rights to A.P.M. and A.L.M. ("the children").

### Procedural History

On August 27, 2014, the Coffee County Department of Human Resources ("DHR") filed separate complaints seeking judgments terminating the parental rights of the mother to the children. Following a trial on February 26, 2015, the juvenile court entered separate, but identically worded, judgments on March 7, 2015, terminating the mother's parental rights to the children. The mother appealed to this court.[1]

### Discussion

### I. Reasonable Efforts

The record shows that A.L.M. was born on June 8, 2012, and that A.P.M. was born on April 17, 2013. DHR became involved with the family in June 2013. On November 22, 2013, following an investigation by DHR that "indicated" that the mother had

---

1. The record on appeal reveals that DHR filed separate complaints to terminate the parental rights of the mother to the children and that those complaints were assigned case no. JU–13–200.04 (regarding A.P.M.) and case no. JU–13–201.04 (regarding A.L.M.), respectively. DHR also filed separate complaints to terminate the parental rights of A.M. ("the father") to the children, and those complaints were assigned case no. JU–13–200.03 and case no. JU–13–201.03, respectively. The juvenile court mistakenly entered judgments terminating the mother's parental rights under the case numbers assigned to the actions involving the termination of the father's parental rights. This court reinvested the juvenile court with jurisdiction to correct that error, which it did by amending the judgments under Rule 60(a), Ala. R. Civ. P. The father has not appealed; thus, this opinion concerns only the facts and issues relevant to the mother's appeals.

inadequately supervised the children,[2] the juvenile court adjudicated the children to be dependent and awarded their custody to DHR, which subsequently placed them in foster care. In its November 22, 2013, orders, the juvenile court, pursuant to § 12–15–312, Ala.Code 1975, ordered DHR to use reasonable efforts to reunite the children with the mother.

According to the testimony of Amanda Pazutto, a DHR social worker, over the course of the next year DHR funded parenting classes, a psychological evaluation, mental-health treatment, drug testing, and domestic-violence counseling for the mother. DHR assigned case aides who worked with the mother in her home on budgeting and other parenting issues. DHR also arranged monthly visitation between the mother and the children. On multiple occasions, DHR either provided or paid for transportation for the mother so she could access rehabilitation services and visit the children. DHR also informed the mother of other state agencies with resources to assist her. On September 14, 2014, the juvenile court conducted a permanency hearing relating to both children. On October 20, 2014, the juvenile court entered a separate permanency order as to each child, finding that DHR had made reasonable family-reunification efforts, that those efforts had failed, and that DHR was no longer required to continue those efforts.[3] DHR submitted the permanency orders into evidence at the termination hearing and requested that the juvenile court take judicial notice of those orders, without objection from the mother, although the mother's attorney did state that the mother did not agree with the juvenile court's findings.

In *Ex parte F.V.O.*, 145 So.3d 27 (Ala.2013), the supreme court held that a permanency order finding that reasonable efforts had been made to reunite the family of a dependent child did not constitute a final judgment that would support an appeal. Hence, the permanency orders in this case did not conclusively adjudicate the issue of the reasonableness of DHR's family-reunification efforts. By taking judicial notice of the permanency orders, the juvenile court obviously considered its previous conclusion on the issue, but it did not foreclose the parties from presenting further evidence on the issue. The final judgments reflect that the juvenile court determined that DHR had made reasonable efforts to reunite the family based not only on its permanency orders but also on the evidence presented at the trial of the petitions to terminate parental rights.

The mother basically argues that the record does not contain sufficient evidence to support the juvenile court's judgments. Whether DHR made reasonable family-reunification efforts is a question of fact for the juvenile court. *R.T.B. v. Cullman Cty. Dep't of Human Res.*, 19 So.3d 198, 204 (Ala.Civ.App.2009). In making its determination, the juvenile court basically decides whether DHR fairly and seriously

---

**2.** "Indicated" means "[w]hen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect." § 26–14–8(a)(1), Ala.Code 1975.

**3.** In this appeal, the mother does not challenge the permanency orders insofar as the juvenile court relieved DHR of the duty to use reasonable efforts to reunite the family. She argues only that DHR did not use reasonable efforts before the entry of the permanency orders. Hence, we distinguish this case from *M.H. v. Jefferson County Department of Human Resources*, 42 So.3d 1291 (Ala.Civ.App. 2010), in which we held that a parent cannot assert in an appeal from a judgment terminating his or her parental rights that the juvenile court had erred in entering a permanency order relieving DHR of using reasonable efforts in an earlier proceeding.

attempted to assist the parent in overcoming the conduct, condition, or circumstances separating the family. *See H.H. v. Baldwin Cty. Dep't of Human Res.*, 989 So.2d 1094, 1104–05 (Ala.Civ.App.2007) (opinion on return to remand) (authored by Moore, J., with two judges concurring in the result and two judges dissenting). A juvenile court's determination that DHR had made reasonable family-reunification efforts must be based on clear and convincing evidence. *See* Ala.Code 1975, § 12–15–319(a). "Clear and convincing evidence" is " ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." ' *L.M. v. D.D.F.*, 840 So.2d 171, 179 (Ala. Civ.App.2002) (quoting § 6–11–20(b)(4), Ala.Code 1975)." *T.D.K. v. L.A.W.*, 78 So.3d 1006, 1010 (Ala.Civ.App.2011). When reviewing the record to determine if a finding that DHR made reasonable efforts is supported by sufficient evidence, this court presumes the correctness of the judgment and will affirm the judgment if the juvenile court could reasonably have been clearly convinced that DHR made reasonable efforts. *See Montgomery Cty. Dep't of Human Res. v. N.B.*, 196 So.3d 1205, 1211 (Ala.Civ.App.2015) (citing *Ex parte McInish*, 47 So.3d 767 (Ala.2008)), cert. denied, 196 So.3d 1217 (Ala.2015).

■ Clear and convincing evidence in the record fully supports the juvenile court's findings that DHR made reasonable efforts to reunite the mother with the children. Although the mother complains that DHR failed to take certain steps to assist her in learning how to care for the special needs of her children, that DHR did not visit her home in the five months before the entry of the permanency orders, and that DHR prematurely suspended her visitation with her children, the mother overlooks the considerable efforts DHR did undertake in an effort to rehabilitate her, some of which we have outlined above. As we stated in *M.A.J. v. S.F.*, 994 So.2d 280, 292 (Ala.Civ.App.2008), "the law speaks in terms of 'reasonable' efforts, not unlimited or even maximal efforts." According to that standard, the juvenile court could have been clearly convinced that DHR had undertaken sufficient measures to reunite the family.

## II. *Sufficiency of the Evidence*

■ The mother next argues that the judgments terminating her parental rights are not supported by the evidence. Section 12–15–319(a), Ala.Code 1975, provides, in pertinent part:

> "If the juvenile court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parent[ ] of a child [is] unable or unwilling to discharge [his or her] responsibilities to and for the child, or that the conduct or condition of the parent[ ] renders [him or her] unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parent[ ] . . . ."

We review a judgment terminating parental rights based on oral testimony with a presumption of correctness, and we will affirm that judgment if the juvenile court reasonably could have been clearly convinced of the facts necessary to sustain its judgment. *Montgomery Cty. Dep't of Human Res. v. N.B., supra.*

■ In her brief to this court, the mother emphasizes that she achieved most of the goals established by DHR. Indeed, the record indicates that the mother completed parenting classes, submitted to a psycho-

logical evaluation, received mental-health treatment, underwent drug testing, which produced no evidence of drug use, attended 16 of 18 domestic-violence classes, and regularly visited with the children. However, a parent's substantial compliance with the goals established by DHR will not prevent a juvenile court from terminating that parent's parental rights if other evidence shows that the parent, despite good-faith efforts to rehabilitate, remains irremediably unfit to properly discharge parental responsibilities to and for the child. *See M.E. v. Shelby Cty. Dep't of Human Res.*, 972 So.2d 89, 103 (Ala.Civ.App.2007) (authored by Moore, J., with Bryan, J., concurring and Thompson, P.J., and Pittman and Thomas, JJ., concurring in the result).

The evidence in the record clearly shows that the older child is a medically fragile child with multiple serious birth defects that require 24–hour–a–day care. The younger child is developmentally delayed and receives speech therapy. Both children reside in a therapeutic foster home dedicated to providing for their evolving special needs. The mother testified that she had received some training to address those needs, but she admitted that she was not sure she could independently care for the children, saying only that she could "give it a shot." The mother's mental-health counselor expressed concerns regarding whether the mother could properly care for her own personal hygiene. The mother lives on $753 per month in "disability income," and she has not supported the children financially since DHR assumed their custody.

The mother testified that she had once been diagnosed with attention-deficit/hyperactivity disorder that has evolved into a bipolar disorder for which she takes daily medication. From February 2014 to November 2014, the mother participated in a day-treatment program at South Central Alabama Mental Health designed to, among other things, help the mother manage her mental illness, but the mother did not complete the program because she had engaged in conflicts with other patients and had disagreed with her counselor's assessment that she was not meeting her goals. The mother testified that she continued to receive mental-health care in order to stop making bad judgments and to help her in her dealings with "devils," stating: "Blue eyes are always my enemies."

The evidence shows without contradiction that the mother engaged in domestic violence with a former paramour who stabbed her in the neck with a knife during a pregnancy and caused her to miscarry. The mother nevertheless continued the relationship for a considerable period before it ended. The mother then began her relationship with the father, and domestic violence also occurred in that relationship. The evidence shows that the mother has problems controlling her anger as a result of her mental illness, and the mother admitted that she had provoked the father to hit her on at least one occasion. The mother's counselor testified that the mother had frequently cried and yelled when discussing the father's abuse. The counselor testified that, on one occasion, she had taken the mother to the hospital for treatment as a result of a physical altercation between the mother and the father. The father, who had refused any mental-health counseling offered by DHR, had repeatedly threatened the DHR social workers and had been escorted by the police from one meeting due to his behavior. At trial, the father frequently interrupted witnesses with outbursts of temper, and he ultimately voluntarily left the hearing without testifying. The mother testified that at one point she had done all she could to leave the father, but, by the time of the trial, she stated her intention to

remain with him. Despite having received significant counseling, the mother testified that domestic violence is "not physical," except in the case of killing, and she denied that she and the father had continued to engage in domestic violence after July 2014, even though her landlord had summoned the police in August 2014 due to the disturbing behavior of the couple. Pazutto testified that the mother could not provide the children a safe home.

From the foregoing evidence, the juvenile court reasonable could have been clearly convinced that the mother could not properly provide for the material, emotional, medical, and safety needs of the children and that the mother's mental-health and domestic-abuse problems would likely continue to prevent her from fulfilling parental responsibilities to the children in the foreseeable future. *See* § 12–15–319(a)(2) (requiring juvenile court to consider emotional or mental illness of the parent "of a duration or nature as to render the parent unable to care for the needs of the child"); *J.M. v. Madison Cty. Dep't of Human Res.*, 164 So.3d 581, 589 (Ala. Civ.App.2013) (affirming judgment terminating parental rights of father who could not meet special medical needs of child); *A.W.G. v. Jefferson Cty. Dep't of Human Res.*, 861 So.2d 400 (Ala.Civ.App.2003) (citing domestic violence of parent as factor in affirming judgment terminating parental rights); and *C.W. v. State Dep't of Human Res.*, 826 So.2d 171 (Ala.Civ.App.2002) (affirming judgment terminating parental rights of mother who continued to reside with abusive paramour). Despite the fact that the mother did accomplish many of the goals established by DHR, we conclude that the juvenile court did not commit any error in concluding that the mother was unable to discharge her parental responsibilities to and for the children.

Because the juvenile court's judgments terminating the mother's parental rights are supported by clear and convincing evidence, the judgments are affirmed.

2140571—AFFIRMED.

2140572—AFFIRMED

THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.

THOMAS, J., concurs in the result, without writing.