Rel: January 26, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

———————————————

## SC-2023-0874

———————————————

## Ex parte E.C.

## PETITION FOR WRIT OF CERTIORARI
## TO THE COURT OF CIVIL APPEALS

## (In re: E.C.

## v.

## DeKalb County Department of Human Resources)

### (DeKalb Juvenile Court: JU-22-64.02;
### Court of Civil Appeals: CL-2023-0257)

SELLERS, Justice.

WRIT DENIED.  NO OPINION.

Shaw, Wise, Bryan, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Parker, C.J., dissents, with opinion.

PARKER, Chief Justice (dissenting).

I respectfully dissent from the Court's denial of certiorari review in this termination-of-parental-rights case. I believe the experience of the two oldest children and the presumption against separating siblings in Alabama law present a likelihood that a viable alternative to terminating the parental rights of E.C. ("the mother") existed. Therefore, the Court of Civil Appeals' decision to affirm the DeKalb Juvenile Court's judgment terminating the mother's parental rights to her youngest child likely conflicts with Ex parte Beasley, 564 So. 2d 950 (Ala. 1990), and J.B. v. DeKalb County Department of Human Resources, 12 So. 3d 100 (Ala. Civ. App. 2008) (plurality opinion).

According to the facts before us, the mother gave birth to her third child in 2022. The DeKalb County Department of Human Resources ("DHR") immediately removed that child from her custody, because she had tested positive for marijuana five times during her pregnancy. That child was placed with N.F., a foster parent. DHR had already removed the mother's two oldest children from her custody and placed them with the same foster parent. DHR prepared an individualized service plan

("ISP") for the mother to regain parental fitness and get her children back. The mother has so far failed to reach the goals listed in her ISP.

DHR filed a petition to terminate the mother's parental rights to her youngest child. At the hearing, the mother failed to appear. The juvenile court heard testimony ore tenus from a DHR caseworker and entered a judgment terminating the mother's parental rights to her youngest child. The mother appealed to the Court of Civil Appeals, which unanimously affirmed the juvenile court's judgment in an unpublished memorandum. See E.C. v. DeKalb Cnty. Dep't of Hum. Res. (No. CL-2023-0257), ____ So. 3d ____ (Ala. Civ. App. 2023) (table). The mother timely sought certiorari review from this Court.

Before DHR began the termination proceeding regarding the youngest child, it had filed petitions to terminate the mother's parental rights to the two oldest children. Those two children were living in the same home as the youngest child, under the care of the same foster parent, N.F. At no point in those proceedings did N.F. petition for custody or intervene in any way. In those proceedings, however, the juvenile court did not terminate the mother's parental rights. Instead, it entered an order permanently placing the two oldest children in the custody of N.F.

4

The record of those proceedings is not before us. But it is undisputed that this arrangement has not been problematic.

Under Alabama law, parental rights may be terminated only if: (1) the court finds, by clear and convincing evidence, that grounds exist for terminating parental rights and (2) the court considers all available alternatives to termination of parental rights and concludes that no viable alternative to termination exists. Ex parte Beasley, 564 So. 2d at 954-55. The mother does not argue in her certiorari petition that no grounds exist for terminating her parental rights. Rather, she argues that the juvenile court overlooked a viable alternative to terminating her parental rights. She argues that the juvenile court could have done with the youngest child what it did with the two oldest children, namely, place the youngest child permanently in the custody of N.F.

I see no reason, based on the facts before us, why this would not have been a "viable alternative" to terminating the mother's parental rights to the youngest child. DHR argued before the Court of Civil Appeals that this would essentially be maintaining the status quo of foster care. The Court of Civil Appeals has pointed out that:

> "when foster parents are amenable to continued contact
> between the child and the parent and when the evidence

5

suggests that such contact is beneficial for the child, maintenance of the status quo <u>or permanent placement with the foster parents</u> can be a viable alternative to the termination of a parent's parental rights."

<u>A.B. v. Montgomery Cnty. Dep't of Hum. Res.</u>, 370 So. 3d 822, 829 (Ala. Civ. App. 2022) (citing <u>P.M. v. Lee Cnty. Dep't of Hum. Res.</u>, 335 So. 3d 1163, 1172 (Ala. Civ. App. 2021)) (emphasis added). In this case, the Court of Civil Appeals held in its unpublished memorandum that the record did not indicate that N.F. was amenable to further contact between the mother and the youngest child or that further contact with the mother would be beneficial to that child. However, the facts before us do not show why the juvenile court did not apply the same reasoning it had applied with respect to the two oldest children. The experience of the two oldest children would seem to indicate that N.F. <u>was</u> amenable to such a placement. And in any case, the presumption under Alabama law is in favor of continued contact with the parents. <u>J.B.</u>, 12 So. 3d at 115 (holding that "[p]arents and their children share a liberty interest in continued association with one another, i.e., a fundamental right to family integrity") (citing <u>Santosky v. Kramer</u>, 455 U.S. 745, 753 (1982)));[1]

---

[1] I note here that <u>J.B.</u> was a plurality opinion, and plurality opinions that have not been adopted by a majority of the judges on the Court of

see also Ex parte E.R.G., 73 So. 3d 634, 646 (Ala. 2011) (plurality opinion) (holding that for a visitation statute to pass constitutional muster, it must "recognize the fundamental presumption in favor of the rights of the parents"). The question is therefore not whether there is clear and convincing evidence demonstrating that continued contact with the mother <u>would</u> be beneficial to the youngest child, but whether there is clear and convincing evidence demonstrating that it would <u>not</u> be. See, e.g. <u>Ex parte Brooks</u>, 513 So. 2d 614, 617 (Ala. 1987) (holding that, "[i]n

_____

Civil Appeals are not 'decisions' of that court for the purposes of Rule 39, Ala. R. App. P. See <u>Ex parte Ball</u>, 323 So. 3d 1187, 1187-88 (Ala. 2020) (Parker, C.J., concurring specially). However, a majority of the judges on the Court of Civil Appeals later adopted this rule from <u>J.B.</u> in <u>Montgomery County Department of Human Resources v. N.B.</u>, 196 So. 3d 1205, 1214 (Ala. Civ. App. 2015) (quoting <u>J.B.</u>, 12 So. 3d at 115), elevating the opinion of the <u>J.B.</u> plurality to a precedential decision of the court. See <u>Ex parte Wood</u>, 852 So. 2d 705, 709 n.3 (Ala. 2002) (citing <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000)) (explaining that, although <u>Ex parte Cranman</u> was a plurality decision, its later adoption by a majority of this Court justified its citation as binding precedent). E.C. also could have presented this issue as a matter of first impression, but she did not. See <u>Ex parte Ball</u>, 323 So. 3d at 1118 (Parker, C.J., concurring specially) (arguing that conflict with a plurality opinion really presents a question of first impression, not conflict with a prior decision). Regardless, because the Court of Civil Appeals subsequently adopted the rule she cites as binding precedent in a later case, I believe E.C., although she referred to the initial plurality opinion of <u>J.B.</u>, has effectively alleged a conflict ground with what is now a decision of the court. See <u>Ex parte Wood</u>, 852 So. 2d at 709 n.3.

7

the absence of clear and convincing evidence that termination of ... parental rights is the appropriate remedy, we cannot agree with the Court of Civil Appeals that the trial court erred in denying the ... [termination] petition"), overruled on other grounds by Ex parte Beasley, supra.

The possibility that a viable alternative to termination exists in this case is rendered more likely by the fact that it is generally in the best interest of children not to be separated from their siblings. In 1986, the Court of Civil Appeals adopted the general rule that "siblings should not be separated in the absence of compelling reasons." Jensen v. Short, 494 So. 2d 90, 92 (Ala. Civ. App. 1986). However, in 2009, Judge Moore wrote that the Court of Civil Appeals often failed to follow the compelling-reason standard and was really following the best-interest-of-the-child standard instead. Alverson v. Alverson, 28 So. 3d 784, 790-94 (Ala. Civ. App. 2009) (Moore, J., joined by Bryan, J., concurring in part and concurring in the result in part). Later that year, the Court of Civil Appeals rejected the compelling-reason standard and held that "our caselaw more accurately holds that siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the

8

separation will serve the best interests of the children at issue." <u>A.B. v. J.B.</u>, 40 So. 3d 723, 729 (Ala. Civ. App. 2009) (citing, among other authority, <u>Alverson</u>, 28 So. 3d at 790 (Moore, J., concurring in part and concurring in the result in part)).

The Court of Civil Appeals later clarified that, under <u>A.B.</u>, trial courts should "not focus solely on the biological relationship between children" but, rather, on "the actual interpersonal relationship between the children and how that relationship will be affected by their separation." <u>K.U. v. J.C.</u>, 196 So. 3d 265, 273 (Ala. Civ. App. 2015) (citing <u>Alverson</u>, 28 So. 3d at 790, 793 (Moore, J., concurring in part and concurring in the result in part)). The Court of Civil Appeals also clarified that it did not mean that trial courts should "disregard the relationship between the children and inquire into the best interests of each child <u>in isolation</u>." <u>Id.</u> at 274 (emphasis added). Thus, the current doctrine appears to be that trial courts must evaluate whether to separate siblings under the best-interest standard but must consider the actual relationships between the children as part of making that decision.

Exactly how keeping siblings together plays into the best-interest standard is a question that neither this Court nor the Court of Civil

9

Appeals has answered. In his influential special writing in <u>Alverson</u>,

Judge Moore, joined by Judge Bryan, attempted to address that question

as follows:

> "Rather, it appears to me that siblings may be separated if the trial court concludes, based on sufficient evidence in the record, that the separation will serve the best interests of the children at issue. In making that determination, the trial court should consider the factors traditionally cited by the appellate courts in this state, <u>see</u> <u>Ex parte Devine</u>, 398 So. 2d 686, 696-97 (Ala. 1981), but it should also consider factors such as the interrelationship of the children, the children's ages, the similarity of interests and activities of the children, whether the children previously resided with the custodial parent, the parents' involvement in the children's upbringing, the parents' emotional stability, the parents' previous lack of cooperation regarding visitation, the children's preference, parental agreement providing for siblings to be together frequently, and the location of the parents' residences. Annotation, <u>Child Custody: Separating Children by Custody Awards to Different Parents-Post-1975 Cases</u>, 67 A.L.R.4th 354 (1989); <u>see also</u> <u>Dronen v. Dronen</u>, 764 N.W.2d 675, 686 (N.D. 2009). I believe each case should be decided on its own factual basis and that the decision should ultimately come down to employing that custody arrangement that serves the best interests of all the children involved."

<u>Alverson</u>, 28 So. 3d at 793 (Moore, J., concurring in part and concurring

in the result in part).

It appears to me that the current doctrine requires the following.

First, children may be separated if, and only if, separation will serve their

best interests. <u>A.B.</u>, 40 So. 3d at 729; <u>Alverson</u>, 20 So. 3d at 793 (Moore,

10

J., concurring in part and concurring in the result in part). Consequently, although the presumption that siblings should stay together is not as strong as it was under the compelling-reason standard, there is still a presumption that siblings should stay together unless the evidence proves otherwise. See also Russell v. Self, 334 So. 3d 229, 239-40 (Ala. Civ. App. 2021) (Thompson, P.J., dissenting) (citing A.B. and asserting that a "judgment that separates siblings should be a rare and unusual occurrence"). Second, a trial court may not consider merely the best interest of each child in isolation but, rather, must consider the actual relationship between the children and how separation will affect that relationship. K.U., 196 So. 3d at 273. Finally, the trial court should consider the other relevant factors listed in Judge Moore's special writing in Alverson.

Here, the juvenile court's judgment as to the youngest child raises the real possibility that the youngest child will at some point be separated from the two oldest children. While the mother retains her parental rights to the two oldest children, there is always the possibility that she could regain parental fitness and their custody. If she does so, and the juvenile court's termination judgment as to the youngest child

11

stands, the two oldest children and the youngest child will inevitably be separated. I do not believe we can lightly overlook this possibility.

However, nothing in the facts before us indicates that the juvenile court considered whether the potential separation of siblings was in the children's best interest. There is no indication that the juvenile court even heard or considered any evidence as to the possibility of the separation of the siblings. The facts before us therefore do not indicate that the juvenile court adequately considered the possibility that its judgment could result in the separation of siblings. The presumption in favor of the fundamental liberty interest in family integrity lends even more weight to this view. J.B., 12 So. 3d at 115. We therefore have all the more reason to grant certiorari review to determine whether a permanent placement like that of the two oldest children would be a viable alternative to the termination of the mother's parental rights to the youngest child.

A termination of parental rights is a drastic action, the equivalent of a civil death penalty. See M.E. v. Shelby Cnty. Dep't of Hum. Res., 972 So. 2d 89, 102 (Ala. Civ. App. 2007) (plurality opinion). I do not believe the facts before this Court sufficiently establish that such a drastic action

was necessary here. Given the previous experience of the two oldest children and the possibility of the siblings being separated in the future, I think the mother has presented a likelihood of merit in her argument that a viable alternative to the termination of her parental rights to her youngest child existed. I therefore think there is a strong likelihood that the Court of Civil Appeals' decision conflicts, as the mother argues, with Ex parte Beasley and J.B.

For the foregoing reasons, I respectfully dissent.